UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAUL J. FENDLER, SR., | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 4:21-CV-614 SRW |
| ANDREW M. SAUL,[1] Commissioner of Social Security Administration, | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 16. Defendant filed a Brief in Support of the Answer. ECF No. 20. Plaintiff did not file a Reply. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.  Factual and Procedural Background**

On May 2, 2019, Plaintiff Paul J. Fendler, Sr., protectively filed an application for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq*. Tr. 87, 154-55.

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

1

Plaintiff's application was denied on initial consideration. Tr. 87, 90-94. On October 3, 2019, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 96-97.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on June 18, 2020. Tr. 45-76. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Susan Shea. *Id*. at 67-75. On September 1, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 28-41. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 10-11, 151-53. On March 26, 2021, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.     Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative

3

assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. Tr. 34. Plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 8, 2019. *Id*. Plaintiff has the severe impairments of degenerative disc disease, osteoarthritis, degenerative joint disease of the right knee, and obesity. *Id*. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 34-35. The ALJ found Plaintiff has the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he can frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can frequently balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to extreme temperatures. He must avoid all exposure to work at unprotected heights and hazardous machinery.

Tr. 35. The ALJ found Plaintiff is capable of performing past relevant work as a delivery driver because such work does not require the performance of work-related activities precluded by the Plaintiff's RFC. Tr. 38. The ALJ alternatively found Plaintiff could perform other jobs that exist

in significant numbers in the national economy, including representative occupations such as general laborer (*Dictionary of Occupational Titles* ("*DOT*") No. 559.667-014, with approximately 80,000 positions nationally), hand packer (*DOT* No. 920.587-018, with approximately 40,000 positions nationally), and machine feeder (*DOT* No. 699.686-010, with approximately 100,000 positions nationally). Tr. 40. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from April 8, 2019 through the date of her decision, issued on September 1, 2020. Tr. 41.

### IV. Discussion

Plaintiff argues the ALJ erred in two respects: (1) failure to properly evaluate past relevant work; and (2) erroneously determining his restless leg syndrome ("RLS") was not a severe medically determinable impairment. ECF No. 16.

**A. Past Relevant Work**

Plaintiff asserts the ALJ erred in finding he was capable of performing his past relevant work as a delivery driver because a commercial driver's license ("CDL") prohibits the use of opioids. *Id.* at 3-4. Plaintiff testified to his need for a Methadone prescription,[2] and the underlying record supports the efficacy of the drug. Tr. 55-56, 63-65, 222, 265, 316-17 (treating provider describes Methadone as "the only meds that have controlled his RLS"), 318 (treating provider confirmed CDL drivers are prohibited from taking Methadone), 319 (complaining of increased symptoms without Methadone), 334 (same). Plaintiff also challenges the VE's categorization of his past work as semi-skilled, instead of unskilled, and the ALJ's failure to limit him to light work.

---

[2] Methadone is used to relieve severe pain in people who are expected to need pain medication around the clock for a long time and who cannot be treated with other medications. Methadone is in a class of medications called opiate (narcotic) analgesics. *MedlinePlus*, available at https://medlineplus.gov/druginfo/meds/a682134.html (last visited July 27, 2022).

6

In response, the Commissioner asserts, "even assuming, for the sake of argument, that the ALJ erred in concluding Plaintiff could perform his past relevant work . . . any such error is harmless, because the ALJ alternatively concluded at step five that Plaintiff could perform other work existing in significant numbers in the national economy." ECF No. 20 at 9-10. The Commissioner also disagrees with Plaintiff's assertion that the VE should have categorized his past work as unskilled, noting his representative had the opportunity to question the VE during the hearing, but failed to do so on this matter. *Id.* at 13. Lastly, the Commissioner argues Plaintiff failed to provide any support for why he should have been limited to light work. *Id.* at 10-14.

The underlying record reflects Plaintiff was employed as a delivery driver from 2000 to 2019. Tr. 51-53, 85, 179. The ALJ addressed the physical and mental demands of the job:

> [Plaintiff] worked eight hours a day, five days a week and earned $5,500 per month. In this job, he count loaded truck upon arrival, drove to numerous stops, pulled merchandise from truck to hand dolly, wheeled the product into the store, reconciled orders on a handheld computer, and repeated up to 20 stores and 700 cases per day. The heaviest he lifted was 100 pounds, but he frequently lifted 30 pounds. He did not supervise others.

Tr. 39. The ALJ referenced the VE's classification of Plaintiff's past work as "delivery driver, *DOT* No. 292.353-010, a medium exertional level job with a specific vocational profile (SVP) of 3, a semi-skilled job." Tr. 39, 68. The ALJ considered the VE's testimony "that a hypothetical individual of claimant's same age, education, work experience and [RFC] could perform the claimant's past work as a delivery driver." Tr. 39. The ALJ then stated she compared Plaintiff's RFC with the physical and mental demands of the delivery driver job, in conjunction with the VE's testimony, and determined he was able to perform such work as it was actually and generally performed. *Id.*

The ALJ also determined there were other jobs existing in significant numbers in the national economy which Plaintiff could perform. *Id.* In making this alternative finding, the ALJ

7

found Plaintiff was 60 years old on his alleged onset date, was an individual closely approaching retirement age, and had at least a high school education. *Id.* The ALJ concluded the transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework he was "not disabled" whether or not he had transferrable job skills. *Id.* Relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff would be able to perform the requirements of unskilled, medium exertional level representative occupations, such as general laborer, hand packer, and machine feeder. Tr. 40.

"An ALJ may find the claimant able to perform past relevant work if the claimant retains the ability to perform the functional requirements of the job as []he actually performed it or as generally required by employers in the national economy." *Samons v. Astrue*, 497 F.3d 813, 821 (8th Cir. 2007). To that end, the Social Security Administration's regulations mandate that, where "we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our [RFC] assessment . . . with the physical and mental demands of your past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f).

The Administration's own interpretation of its regulations provides, "The decision as to whether the claimant retains the functional capacity to perform past work . . . must be developed and explained fully in the disability decision." SSR 8262, 1982 WL 31386, at *3. "Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate." *Id.*

Commensurate with those regulations, the Eighth Circuit requires that, in addition to determining a plaintiff's RFC, at step four of the sequential evaluation process, "[t]he ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work." *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999) (quoting *Groeper v. Sullivan*, 932 F.2d 1234, 1239 (8th Cir. 1991)). An ALJ may obtain information from the claimant or the claimant's past employer "as to the physical and mental demands of [his] position" as it was actually performed. *Kirby v. Sullivan,* 923 F.2d 1323, 1327 (8th Cir. 1991); *see* 20 C.F.R. §§ 404.1565(b), 416.965(b). Alternatively, "[t]he ALJ may discharge this duty by referring to the specific job descriptions in the *Dictionary of Occupational Titles* that are associated with the claimant's past work." *Pfitzner*, 169 F.3d at 569. "The ALJ may also rely on vocational expert testimony to fulfill this obligation." *James v. Astrue*, 2008 WL 4204712, at *10 (E.D. Mo. Sept. 8, 2008); *see* 20 C.F.R. § 404.1560(b)(2).

Furthermore, the Eighth Circuit has explained, following an analysis of the demands of a claimant's past work, "the ALJ should compare the claimant's [RFC] with the actual demands of the past work to determine whether the claimant is capable of performing the relevant tasks." *Groeper*, 932 F.2d at 1238-39 (citations omitted). "A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his past work." *Id.* at 1239 (citations omitted); *see also Ingram v. Chater*, 107 F.3d 598, 605 (8th Cir. 1997). "The ALJ's failure to fulfill this obligation requires reversal." *Groeper*, 932 F.2d at 1238.

In the present case the ALJ described the physical and mental demands of Plaintiff's past work, including his daily responsibilities and the maximum amount of weight he lifted. Tr. 39. However, the Court notes that while the ALJ discussed his use of prescribed opioids in the

9

formulation of his RFC, it was not addressed when determining whether he could perform his past relevant work as a delivery driver. In the RFC section of the determination, the ALJ wrote:

> A treatment record dated April 9, 2019, from Daniel Wagner, M.D., notes the claimant was taking methadone and Vicodin that controlled his restless leg syndrome, but the Department of Transportation told him he had to stop taking the medications or not work. . . . Dr. Wagner noted that the claimant had tried other medications, but these all had significant side effects. . . . On April 10, Dr. Wagner noted that he spoke to the DOT and was informed that methadone was absolutely forbidden for commercial driver[']s license, (CDL) drivers, but the hydrocodone was allowed as long as he did not take it eight hours before his shift and no more than four tablets per day. Dr. Wagner noted the claimant agreed to stop the methadone and Dr. Wagner would stop prescribing it.
>
> On April 30, 2019, Dr. Wagner noted complaints that the claimant was only sleeping one to three hours at night since starting hydrocodone. He stated he had taken up to five tablets in the evening, which had no effect on his restless leg syndrome. The claimant told Dr. Wagner he would likely retire early so he can go back on Methadone and "get some sleep." On June 3, 2019, the claimant reported to Dr. Wagner that he had to retire so he could take the methadone and Vicodin, which helped control his restless leg symptoms and he was able to sleep well.

Tr. 36-37 (internal citations omitted). During the hearing the ALJ asked the VE whether a hypothetical individual with the same RFC as Plaintiff who could not operate a motor vehicle would be able to perform Plaintiff's past work as a delivery driver. Tr. 69. The VE answered in the negative. *Id.*

Although the Eighth Circuit has not explicitly addressed whether an ALJ's failure to consider the effect of opioids on a claimant's ability to perform past work is reversible error, the Ninth Circuit has held that "[i]f a drug prescription disqualifies a claimant from performing his past relevant work, he is not capable of returning to that work." *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). In *Berry*, the plaintiff argued the ALJ erred in finding he could return to his past work as a courier driver because he would need a CDL, and his prescription drug use would render him physically unable to pass a mandatory drug test required to obtain and keep a CDL. *Id.* at 1231-1234. The Ninth Circuit reasoned that the plaintiff "cannot meaningfully be

10

said to be capable of working as a courier" without evidence as to whether his prescription drug regimen would prevent him from passing mandatory drug testing. *Id.* at 1233-1234. *See also Pollaccia v. Comm'r of Soc. Sec.*, 2011 WL 281044, at *8 (E.D. Mich. Jan. 6, 2011) (remanding case where ALJ found plaintiff was capable of performing past work as bus driver despite being prescribed medications that disqualified her from holding a CDL); *Southard v. Saul*, 2021 WL 718586, at *10 (N.D. Ala. Feb. 24, 2021) ("On remand, the ALJ should address the claimant's testimony regarding his ability to obtain a CDL to perform his past work as a bus driver.").

This Court finds *Berry v. Astrue* to provide persuasive authority for the position that the ALJ erred in not considering the effect his prescribed treatment and disqualification for a CDL had on his capability of performing his past relevant work as a delivery driver. Plaintiff asserts in his briefing that his work as a delivery driver required a CDL, and he testified that without such licensure he could not maintain his past work or any other similar work. ECF No. 16 at 3 (citing *Missouri Department of Revenue*, CDL Permit Rule Overview, available at https://dor.mo.gov/driver-license/issuance/commercial/cdl-permit.html) (last visited July 27, 2022); Tr. 63-64. Moreover, the underlying record reflects his treating physician verified "methadone is absolutely forbidden for CDL drivers." Tr. 318.

Notwithstanding the above error, the ALJ did not end the analysis at step four of the sequential process. Rather, the ALJ proceeded to step five and found Plaintiff capable of performing other work in the national economy which did not require a CDL. Tr. 39-40. These jobs included general laborer, hand packer, and machine feeder. Tr. 40. The VE testified that a prescription for opiates would not preclude such work. Tr. 72. Because the ALJ provided an alternative basis for the conclusion that Plaintiff was not disabled, the ALJ's determination that Plaintiff can perform his past relevant work as a delivery driver, despite being precluded from

obtaining a CDL, was harmless error. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (applying harmless error analysis and noting the standard is "whether the ALJ would have reached the same decision denying benefits" even absent the error); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Hewitt v. Colvin*, 2015 WL 1286309, at *16 (E.D. Mo. Mar. 20, 2015) ("to the extent the ALJ committed any error at Step 4 of the sequential analysis, such error was harmless inasmuch as the ALJ made an alternative finding at Step 5 that [plaintiff] could perform other work in the national economy"). To the same end, because the ALJ found Plaintiff could perform work other than the delivery driver job, any error regarding the classification of his past work as skilled or unskilled would also be harmless error. *See, e.g.*, *Kalinowski v. Colvin*, 2014 WL 287992, at *4 (W.D. Ark. Jan. 27, 2014) (ALJ's reference to an incorrect DOT number was harmless error because determination identified other jobs plaintiff would be able to perform).

Additionally, Plaintiff presents a one-sentence argument that he should have been limited to light work instead of medium work. He states "the medical evidence of degenerative joint disease of the knees with crepitus, degenerative disk disease of the lumbosacral spine and the need for methadone and hydrocodone, which are strong opiates, would reasonably limit Plaintiff to light work." ECF No. 16 at 7. Plaintiff does not point to any medical evidence in the record, nor did the Court find any such evidence, to dispute the ALJ's assessment that Plaintiff has the RFC to perform medium work with additional limitations.

As the Commissioner notes, the ALJ expressly found Plaintiff's knee and back impairments to be severe and considered his use of opioids and narcotics when formulating the RFC. *See* Tr. 34-38. Moreover, the ALJ explicitly asked the VE whether the DOT precluded any of the alternative jobs because of opioid use, and the VE said it would not. Tr. 72. The ALJ

12

supported the RFC conclusions with a discussion of Plaintiff's self-reported symptoms, activities of daily living, lack of medication side effects, prescription effectiveness, and objective medical findings from physical, neurological, and radiological examinations. Tr. 36-38.

Plaintiff references no inconsistencies in the record that were unaddressed by the ALJ, nor does he identify any evidence that contradicts the ALJ's analysis. Plaintiff does not dispute the ALJ's analysis of the persuasiveness of the medical opinions in the record. Moreover, the Court's independent review of the record confirms the RFC is supported by substantial evidence. *See* Tr. 224 (normal physical examination, including extremities and musculoskeletal), 267 (same), 316-17 (reporting prescription medication relieves symptoms), 333 (right knee x-ray revealed mild arthritis); 339 (lumbosacral spine x-ray revealed mild disc space narrowing); 340-41 (normal range of motion); 346 (normal physical examination, including extremities and musculoskeletal), 350 (same). Plaintiff reported he is able to cook, clean, do laundry, shower, bathe, and dress himself with no issues, and can walk up to several miles despite experiencing right knee pain. Tr. 189, 333-34. Thus, the Court rejects Plaintiff's unsupported argument and finds that the ALJ's determination that Plaintiff is capable of performing medium work with specific limitations was not reversible error.

**B. Evaluation at Step Two**

Plaintiff argues the ALJ erred at Step Two by not including Plaintiff's RLS to be one of his severe impairments. ECF No. 16 at 8-9. Plaintiff asserts his RLS was a severe impairment because he was repeatedly diagnosed with the condition by his medical provider, and was prescribed opioids to treat the condition, which prevented him from maintaining a CDL.

At Step Two of the five-step sequential evaluation used to determine whether a claimant is disabled, the ALJ must determine whether the claimant has a "severe" impairment which

lasted or is expected to last for at least twelve months. *See* 20 C.F.R. §§ 404.1509, 416.909. To show an impairment is severe, a claimant must show he has (1) a medically determinable impairment or combination of impairments, which (2) significantly limits his physical or mental ability to perform basic work activities, without regard to age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 404.1521(a), 416.920(a)(4)(ii), (c); 416.921(a).

A severe impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Basic work activities include, among other things, physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as various mental and physical activities. 20 C.F.R. § 416.921(b). Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b), 416.922. The plaintiff bears the burden of establishing that an impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

Courts have held an error at Step Two may be harmless if the ALJ nonetheless considered all of a plaintiff's impairments, severe and non-severe, in his or her subsequent analysis. *See Spainhour v. Astrue*, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC."). *See also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Although Plaintiff was unquestionably diagnosed with RLS, Plaintiff failed to meet his burden of showing that it significantly limited his ability to do basic work activities not requiring a CDL. The underlying medical record revealed largely normal physical and neurological examinations, as well as his ability to walk on his heals and toes with no assistive ambulation device, ascend a descend an examination table, rise from a chair, and partially squat. Tr. 34, 36-38, 316, 321, 335-37, 346, 350. The ALJ explicitly noted, although Plaintiff was actively treated for RLS, the objective medical findings "did not include significant deficits in strength, neurological function, range of motion, posture, sensation, reflexes, pulses or gait, lasting, or expecting to last, twelve months in duration." Tr. 38.

The ALJ also appropriately considered that Plaintiff's RLS was controlled through prescription medication, and he was able to perform physical tasks, such as fishing, mowing the lawn, walking for several miles, and doing laundry. Tr. 36-37, 334. *See Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) (impairment that is controlled with treatment or medication is not considered disabling); *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (finding the plaintiff's reported ability to perform light housework, cook, do laundry, shop, watch television, drive, leave the house alone, and regularly attend church "undermines her assertion of total disability").

For the above reasons, the ALJ's decision not to include RLS among Plaintiff's severe impairments was supported by substantial evidence. Moreover, even assuming *arguendo* that the ALJ did err by not finding RLS to be a severe impairment, such error was harmless. Courts frequently find that an ALJ's error at Step Two in failing to find a particular impairment severe does not require reversal where the ALJ finds other severe impairments and considers all of a claimant's impairments, severe and non-severe, in his or her subsequent analysis. *See Givans v.*

15

*Astrue*, 2012 WL 1060123, at *17 (E.D. Mo. March 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining the plaintiff's RFC); *Spainhour v. Astrue*, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) (same); s*ee also* 20 C.F.R. § 416.945(a)(2).

In the instant matter, the ALJ considered all of Plaintiff's limitations, including RLS, in the analysis after Step Two. In assessing Plaintiff's RFC, the ALJ specifically discussed Plaintiff's testimony regarding his RLS diagnosis, and the relevant medical records, and concluded that Plaintiff's RLS did not preclude him from performing basic work activities. Tr. 35-38. Thus, the Court finds no reversible error based on the ALJ's failure to include RLS among Plaintiff's severe impairments.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Paul J. Fendler, Sr.'s Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 8th day of August, 2022.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE